Erik Strindberg (Bar No. 4134)
**STRINDBERG & SCHOLNICK, LLC**
675 East 2100 South, Suite 350
Salt Lake City, Utah 84106
Telephone:   (801) 359-4169
Facsimile:   (801) 359-4313
Email:   erik@utahjobjustice.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KATHLEEN CHRISTY**,<br><br>          Plaintiff,<br><br>v.<br><br>**SALT LAKE CITY SCHOOL DISTRICT**, a political subdivision of the State of Utah, and **MCKELL WITHERS**, an individual. | **COMPLAINT**<br>**AND JURY DEMAND**<br><br>Case No.:  2:18-cv-000837-RJS<br><br>Judge:  Robert J. Shelby |

Plaintiff Kathleen Christy ("Christy" or "Plaintiff"), by and through her undersigned counsel, to complain against Defendant Salt Lake City School District ("District") and Dr. McKell Withers ("Withers") (collectively, "Defendants") as follows:

### NATURE OF CASE

Plaintiff seeks redress under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against Defendants; and under 42 U.S.C. § 1981 against Defendants.

## PARTIES

1. Christy is an individual residing in Salt Lake County, Utah. At all relevant times in this Complaint, Christy was employed by the District as a high-level administrator until she retired in July 2017.

2. Defendant District is a political subdivision of the State of Utah. During all relevant times in this Complaint, the District had and continues to have 15 or more employees, and as such, it is an "employer" within the meaning of § 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

3. Defendant Withers is the former Superintendent of the District. At all relevant times in this Complaint, Withers was a Superintendent of the District.

## JURISDICTION AND VENUE

4. This Court is vested with jurisdiction over all actions in this matter pursuant to 28 U.S.C. § 1331, §1334, because Christy has brought claims for violations of federal law pursuant to: 42 U.S.C. § 2000e-5 (f)(3) (Title VII); and 42 U.S.C. § 1981 (1981).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), in that Plaintiff resides within this judicial district and a substantial part of the events alleged herein occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE AND OTHER REMEDIES

6. Christy has complied with all conditions precedent to the court's jurisdiction of her claims.

7. On or around January 19, 2017, Christy timely filed a charge of retaliation

and racial discrimination against the District with the Equal Employment Opportunity Commission ("EEOC") and the Utah Anti-Discrimination and Labor Division.

8. On or around July 26, 2018, EEOC issued Christy a Notice of Right to Sue, which she received on August 1, 2018.

9. This Complaint has been timely filed within 90 days of receipt of that notice.

## GENERAL ALLEGATIONS

10. Christy is an African American woman who has had a very successful career at the District and in the education system generally.

11. Christy has a Bachelor's degree in Elementary Education from the University of Utah (1975), a Master's of Education from the University of Utah (1977), and a Ph.D. in Education, Culture and Society from the University of Utah (2016).

12. The District first hired Christy in 1975 as a teacher at Edison Elementary School until 1980.

13. From 1980 to 1985, Christy was employed as a teacher in Los Angeles, California.

14. Christy moved back to Utah in 1985 and worked at the Utah State Office of Education as an Equity Specialist.

15. In 1993, the District hired Christy again as a principal at both Franklin Elementary School and Bonneville Elementary School.

16. Throughout her tenure with the District, Christy quickly displayed her exemplary work ethic and impeccable work record.

17. In 1993, Christy earned the NAACP Albert Fritz Civil Rights Worker of the Year for Achievement in Education and the YMCA Woman of the Year Award for Achievement in Education in 1993. Christy also won various other awards including the Cesar Chavez Peace and Justice Award in 2010 and the Omega Psi Phi Educator of the Year in 2013.

18. Christy was also a member of various boards within the community, such as the Board of Directors for Utah Foster Care (2012-2017), Commission on Criminal and Juvenile Justice (2014-2017, and the Delta Sigma Theta Sorority, Inc. (1988-present).

19. In 2001, the District Withers promoted to Superintendent of the District.

20. On September 1, 2003, Withers reorganized the District, appointing Patrick Garcia ("Garcia"), a Latino male, and Christy as Assistants to the Superintendent for School Services.

21. Christy's position as Assistant to the Superintendent specifically required her to perform various duties including, but not limited to, the following:

    a. Overseeing and managing 15 staff members;

    b. Acting as the District's Compliance Officer; and

    c. Managing the English as a Second Language, Title VI Indian Education Program, Professional Development for Diversity, and refugee programs.

22. In 2007, the District appointed Christy as the District's Title IX coordinator and as director of the "Educational Equity Department" ("Equity"), whose main goal was to address the education gap in the minority community.

23. After becoming the director of Equity, Christy in good faith attempted to work with Withers on Equity projects.

24. Christy quickly learned that Withers would attempt to thwart her efforts to implement change and improvements for minority students and the District as a whole.

25. Christy and other members of Equity often noted how uncomfortable and irritated Withers felt when they approached him with ideas or changes that could be implemented in the District for minority students.

26. In fact, most of their ideas were never implemented or simply ignored by Withers.

27. Withers also rarely attended Equity leadership meetings with members of the community to discuss important minority issues, such as the school to prison pipeline.

28. Thus, when the community members and Equity met, Withers was rarely present to assure to the participants in the meeting that their concerns would be heard.

29. For example, Christy suggested to Withers, over the course of many years, that the District print out important announcements for the students' parents in the District's 10-most used languages (besides English), so the parents would be aware of important events and deadlines for their children (It is important to note that the District is approximately 60% non-white and over 50 languages are spoken within its boundaries).

30. Withers repeatedly informed Christy that he did not want to spend District money on this project or that it was simply too much work.

31. After years of trying to implement this project, Withers took over the

budget and assignment of who would pay for the translations in or around August 2014.

32. Instead of printing the most significant documents for the students' parents, Withers printed only the District's Board policies in two additional languages, Spanish and Tongan.

33. In or around January 2015, Garcia announced to Withers and others of his planned retirement at the end of the 2015-2016 school year. Soon thereafter, Withers announced that he was to retire in June 2016.

34. In or around this same time, Christy hinted to Withers that she was considering retirement, but was still not quite sure.

35. After Garcia and Withers announced their retirement, Withers crafted a plan that entailed a transitional reorganization for the new superintendent who was to be appointed.

36. This reorganization structure included the formation of three "Chief Officers" who would split the responsibilities of Garcia once Garcia retired. The Chief Officers would also report directly to Withers and would receive a pay raise reflective of their additional workload.

37. In selecting the Chief Officers, Withers elected to not allow applications from the public or from employees of the District. Instead, Withers hand-picked each of the new Chief Officers.

38. In October 2015, Withers announced the new reorganization and the new Chief Officers in a General Administrative Meeting with approximately 70-80 people from the District present.

39.     Withers then announced the three new Chief Officers, who he had personally picked, Barbara Kuehl, Brian Conley, and Larry Madden. All three of them are white.

40.     Upon seeing the announcement, it seemed to Christy and other minority administrators that Withers purposefully closed the application process because he did not want a minority in the position of Chief Officer.

41.     That Withers' actions might be discriminatory was even more evident as many highly qualified minority candidates within the District would have qualified for this position, such as Christy, Dr. Sandra Buendia (Assistant Principal at East High School), and James Yapias (Principal of Bryant Middle School).

42.     At the meeting, Withers then displayed on a projector screen the new organizational chart.

43.     Upon looking at the chart, Christy noticed that her name was left completely off of the chart, and that the Equity department was placed below one of the new, white Chief Officers who had no experience in working with Equity and was previously at the same level as Christy.

44.     Upon seeing her name withheld on the chart and now also working under someone of her same status level with Equity, Christy immediately felt embarrassed and knew that many of her colleagues were going to approach her and ask if something had happened with her employment status at the District.

45.     As Christy predicted, many of her friends and colleagues approached her offering their apologies for Withers' actions.

46. Further, many administrators expressed to Christy their concern that there was no consideration for addressing diversity and minority issues and that minority leaders had been overlooked as potential candidates for the new Chief Officer positions.

47. After subsequent meetings with Withers, Christy learned that she would be given a new assignment.

48. Withers then assigned Christy to be the Special Assistant to the Superintendent. This position was then updated on a new reorganization chart.

49. However, to Christy's disbelief, her new position was listed as lasting only one year.

50. As a result of these actions, Christy informed Withers that she was reconsidering her retirement as she saw Equity was being marginalized and did not want the hours she put into Equity to be lost.

51. Christy also spearheaded discussions on what she and many other district administrators felt about the discriminatory reorganization.

52. Subsequently, five members of Equity, four of whom were people of color, including Christy, and one who was white, met with Withers expressing the concerns of Equity and other District administrators regarding the marginalization of Equity and the lack of a fair and competitive process for the Chief Officer positions.

53. In response, Withers tried to excuse his actions by stating that the positions were only temporary until the new superintendent was selected.

54. On December 14, 2015, these same five members of Equity also wrote a letter to the Board of Education, Administrators, and the School Community Councils

outlining these same concerns of racial discrimination.

55. Following these actions by Christy and other administrators, it became apparent that Withers was not happy with Christy for organizing discussions concerning his discriminatory reorganization decisions and began to take adverse actions against her.

56. First, Withers began holding meetings that Christy should have been part of, but failed to invite her.

57. Specifically, the meetings were with Withers and executive directors discussing a new Equity Action Plan – the same team Christy directed.

58. Second, Withers directed his staff to investigate Christy's doctorate degree. The staff discovered that Christy had yet to have her dissertation signed off by the committee at the University of Utah, although she had successfully defended her dissertation in November of 2015.

59. Third, Withers also began to investigate Christy's involvement in hiring a consultant, Edwin Javius ("Javius"), also an African American. Javius was hired by the District to work with Equity on staff development, working with teachers on how to teach children of diverse backgrounds, and to address the educational gap of minority students.

60. On May 6, 2016, the District issued Christy a Notice of Allegations ("Allegations") alleging principally two allegations.

61. First, "for the past several months", Christy had "misrepresented to the District, Board members, and community that [she had] been awarded a Doctorate Degree", Christy "encouraged and perpetuated this inaccurate misrepresentation", and "at no time did Ms. Christy indicate to any District personnel or Board member that she has

9

not completed all the steps necessary to be awarded a PhD by an accredited institution."

62. And second, the Allegations alleged that Christy "violated District and State purchasing procedures by knowingly awarding a contract to an individual [Javius] who had misrepresented their [sic] educational experience."

63. On May 13, 2016, Christy wrote a response to the Allegations.

64. In her response to the first allegation, Christy clarified that she already had defended her dissertation and that all she had left to do was to make some minor edits and get signatures from the committee. However, once Christy had successfully defended her dissertation, without her encouragement, many of her friends and colleagues referred to her as "Doctor". In fact, it was common knowledge that Christy had remaining technical aspects required for completion of her degree as she repeatedly explained and discussed the status of her degree in a very open manner to everyone. Further, other administrators such as Bobbie Kirby and Jana Edward were referred to as "Doctors" before officially receiving their doctorate degree and they were not being disciplined.

65. Christy also never denied that some of her friends and colleagues referred to her as "Doctor", but the general practice is that once you defend dissertation, you are called "Doctor".

66. Significantly, the Allegations presented no evidence of Christy intentionally misrepresenting her degree status in order to obtain any material benefit; Christy never obtained any personal, financial, or any other gain from this alleged misrepresentation. Further, Christy's unintentional misrepresentations never caused the District any financial, reputational, or other harm.

67. In response to the second allegation in the Response, Christy affirmed that she was not involved in the approval of Javius' original contract in 2010 nor was she involved in the ultimate decision to extend EdEquity's contract with the District in 2013. Christy only helped in Javius' contract renewal by completing a requisition that did not reference Javius with a doctor title.

68. Christy also had no knowledge that Javius had misrepresented his degree at the time of the initial contract. In fact, it was common for many of the administrators at the District, including Christy, to refer to Javius as "Dr. Javius".

69. Christy was also not aware that calling Javius "Dr. Javius" was even a concern until February 2015. Upon discovering this concern, Christy immediately relayed the information to her staff and took the necessary steps to refrain from referring to Javius as "Doctor".

70. Additionally, the District was fully aware of these issues prior to the contract extension and took no action and has not taken any action to seek retribution from EdEquity Inc. for the claimed misrepresentation. Yet, while many other administrators knew of Javius' alleged misrepresentation, Christy was the only one who suffered retaliation for this supposed violation.

71. On May 31, 2016, the District issued findings regarding an investigation of Allegations that were performed by Craig Ruesch ("Mr. Ruesch") from the District's Human Resources Department.

72. The investigation "found" exactly what the Allegations had set forth. First, Christy using the title of "doctor" and "PhD" was inappropriate since she had not been

issued an official degree. And second, Christy misrepresented that Javius had a doctorate degree and she had extended a contract with his company, EdEquity, Inc., after she learned of this information.

73.     Mr. Ruesch then alleged that Christy was in violation of the District's personnel policies P-1[1] and P-4[2] District personnel policies and Utah Code Ann. §67-16-4(1)(c) for the "use or attempt to use [of her] official position to secure special privileges for others."

74.     Christy also allegedly violated "F:2 Administrative Procedures, Purchasing, Sections (I)(A) and (II)(C)", Utah Admin. Code R277-515-6(1) (Professional Educator Conduct), and Utah Admin. Code R33 (Administrative Services, Purchasing and General Services).

75.     Mr. Ruesch then recommended that "due to the egregious nature of the issues and policy violations involved, significant discipline, up to and including termination, should be administered."

76.     On June 30, 2016, Withers wrote a letter to Christy declaring that her

---

[1] P-1: Administrative Procedur3es, Ethical Standards, Sections:
    (II)(A)(3) which requires that one "fulfill professional responsibilities with honesty and integrity";
    (II)(A)(4) which requires that one "will be a role model of civic and society responsibility"; and/or
    (II)(B)(2) which requires that you not use your position within the district for either special privileges or exemptions for yourself or others, including relatives.
[2] P-4: Administrative Procedures, Discipline of District Employees, Sections:
    (I)(A)(1) violating any established statute, law, rule, regulation, policy, or directive, including but not limited to those found in the applicable written/negotiated agreement, the Employment Handbook, board policies and administrative procedures, applicable rules of professional conduct, and state and federal law;
    (I)(A)(2) violating common established standards of morality;
    (I)(A)(2) engaging in misfeasance, malfeasance, or nonfeasance;
    (I)(A)(2) knowingly providing false, misleading, or inaccurate information to the district;
    (I)(A)(13) failing to disclose a conflict of interest or engaging in other unethical behavior;
    (I)(H) Conduct which results in a substantial disruption to the work environment or educational mission of the district; and/or
    (I)(H) Conduct which exposes the district to censure, ridicule, damage, or reproach.

misrepresentations were of an "egregious nature" and were completely "unacceptable". Withers then adopted Mr. Ruesch's findings and issued the following punishments;

    a. Christy was to serve a five-day suspension, effective July 5, 2016;

    b. Christy would be demoted to Equity Plan Coordinator, with a reduced salary on Lane II, Step 5; and

    c. Christy would have direct supervision of her work by Claustina Mahon-Reynolds.

77. Without any opportunity to appeal her suspension, Christy served her five-day suspension and returned to work on July 12, 2016.

78. Christy appealed her demotion and suspension (even though she already served it) and requested a hearing.

79. Christy's appeal hearing was held on August 25, 2016.

80. On September 27, 2016, the hearing officer upheld Wither's decision to suspend and demote Christy.

81. On January 17, 2017, Christy received a notice from the Utah Professional Practices Advisory Commission informing her of their investigation of her actions and a potential disciplinary action against her Education License.

82. Christy, after being discriminated against and humiliated by her superiors, retired after a twenty-five year and successful career with the District in July 2017.

83. The Utah Professional Practices Advisory Commission dismissed their investigation in or around April 2018.

# FIRST CAUSE OF ACTION
## Racial Discrimination in Violation of Title VII Against Defendant District

84.     Christy reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

85.     At all times material herein, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* was in full force and effect, and was binding upon Defendants. Title VII, specifically 42 U.S.C. § 2000e-2(a)(1) makes it unlawful for an employer to:

> To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

86.     Christy is a member of a protected class based on her race and color.

87.     As set forth above, during Christy's employment, the District, through its agents, managers, supervisors and employees, discriminated against her through the following illegal actions:

   a.   Attempting to thwart her efforts in implementing change through Equity;

   b.   Preventing her from having an unobstructed and fair process to apply for the Chief Officer position;

   c.   Demoting her to the Equity Plan Coordinator position where she lost prestige, responsibilities, and supervised less employees;

   d.   Placing Equity beneath a Chief Officer that is at the same job status as her and had no experience with Equity;

   e.   Suspending her for five-days;

   f.   Excluding her from meetings she previously participated in;

  g. Removing her from the organization chart and displaying that chart in front of 70-80 members of the District;

  h. Falsely accusing her of intending to create the perception that she had completely finished her doctorate degree; and

  i. Falsely accusing her of intentionally contracting with Javius whom she knew had not completely finished his doctorate degree.

88. As set forth above, white employees in the District were not subject to the same type of restrictions, repeated disciplinary actions and failures to promote, and the other adverse actions taken against Christy by District because of her race.

89. Even though Christy repeatedly reported the discriminatory conduct to the District, by and through Withers, the Board of Education, other administrators, the School Community Councils, and others, the District failed to take remedial action.

90. Such actions constitution unlawful discrimination against Christy with respect to the terms, conditions, privileges, and benefits of her employment.

91. Christy has suffered and will continue to suffer irreparable injury caused by the illegal conduct of District. As a result of their unlawful conduct, Christy has also suffered damages in the form of lost wages, lost benefits, emotional distress, pain and suffering, inconvenience, mental anguish, and other nonpecuniary damages.

92. For the aforementioned reasons, Christy is entitled to compensatory damages against SLC in an amount to be determined at trial.

93. Christy is also entitled to recover her reasonable attorney's fees and costs incurred herein.

## SECOND CAUSE OF ACTION
**Unlawful Retaliation in Violation of Title VII Against Defendant District**

94. Christy reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

95. At all times material herein, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* was in full force and effect and was binding upon Defendant. 42 U.S.C.§ 2000e-3(a) makes it unlawful for an employer to retaliate against an employee for engaging in protected activity:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

96. Christy engaged in a protected activity by reporting the racial discrimination in a letter outlining racial discrimination in the hiring process of Chief Officers, among other things, to the Board of Education, Administrators, and the School Community Councils, including Withers.

97. In response, the District repeatedly took adverse action and retaliated against Christy, including but not limited to the following actions:

    a. Demoting her to the Equity Plan Coordinator position where she lost prestige, responsibilities, and supervised less employees;

    b. Placing Equity beneath a Chief Officer that is at the same job status as her and had no experience with Equity;

    c. Suspending her for five-days;

    d.    Excluding her from meetings she previously participated in;

    e.    Removing her from the organization chart and displaying that chart in front of 70-80 members of the District;

    f.    Falsely accusing her of intending to create the perception that she had completely finished her doctorate degree; and

    g.    Falsely accusing her of intentionally contracting with Javius whom she knew had not completely finished his doctorate degree; and

    h.    Changing her position from Assistant to the Superintendent to Special Assistant to the Superintendent.

98. The District would not have disciplined, transferred, demoted, or engaged in any other retaliatory acts, but for Christy's internal discrimination complaints.

99. Christy has suffered and will continue to suffer irreparable injury caused by the illegal conduct of the District. As a result of their unlawful conduct, Christy has also suffered damages in the form of lost wages, lost benefits, emotional distress, pain and suffering, inconvenience, mental anguish, and other nonpecuniary damages.

100. By reason of the foregoing, Christy is entitled to compensatory damages against the District in an amount to be determined at trial.

101. Christy is also entitled to recover her reasonable attorney's fees and costs incurred herein.

## THIRD CAUSE OF ACTION
**Race Discrimination in Violation of 42 U.S.C. §1981 Against Both Defendants**

102. Christy reasserts and incorporates by reference all preceding paragraphs as if

fully set forth herein.

103. Defendants' actions demonstrated discriminatory conduct towards minorities.

104. A reasonable person in Christy's circumstances would have found the situation intolerable as she was not given a fair and open opportunity for a promotion, demoted, suspended, the only one to be given a direct supervisor, embarrassed in front of many of her friends and colleagues, left out on the organizational chart, denied a fair opportunity to perform her duties with Equity, falsely accused of intentionally misrepresenting herself as having a doctorate degree, falsely accused of intentionally contracting with Javius whom she knew had not completely finished his doctorate degree, and many other actions.

105. The Defendants intentionally discriminated against Christy based upon her race and color which resulted in a demotion, suspension, humiliation, and false accusations.

106. As a result of Defendants' actions, Christy has suffered and will continue to suffer economic loss, including lost wages and benefits; future pecuniary losses; emotional distress, and other compensatory damages; Christy is entitled to recover for those losses and to prejudgment interest; and attorneys' fees costs.

## FOURTH CAUSE OF ACTION
**Unlawful Retaliation in Violation of 42 U.S.C. § 1981 Against Both Defendants**

107. Christy reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

108. Christy reported in good faith of race discrimination in violation of 42 U.S.C.

§ 1981 to Defendants. Specifically, she reported that she and other minorities were purposefully left out of a hiring process and that Equity was being marginalized because of their minority status and race.

109. Defendants' adverse actions, including its demotion and discipline of Christy, was the result of her protected activity.

110. Defendants' acts would likely have deterred a person of ordinary firmness from reporting discrimination.

111. Christy suffered harm as a result of Defendants' retaliation. She is entitled to recover all resulting damages, including lost pay and benefits, future lost pay and benefits, and emotional distress damages.

112. Christy is entitled to all reasonable attorney's fees and costs incurred in bringing this action.

113. Christy is also entitled to punitive damages as Defendants acted maliciously and with reckless disregard to her rights.

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants,

a. For Plaintiff's lost wages and benefits, to include back-pay and front-pay, as provided for under Title VII and as otherwise provided by law;

b. For general damages;

c. For compensatory damages;

d.  For consequential damages, as provided for under Title VII and as otherwise provided by law;

e.  For punitive damages (from the individual defendant);

f.  For attorney's fees and costs as allowed by law;

g.  For interest (both pre- and post-judgment); and

h.  For such further and other relief as the Court deems appropriate.

DATED this 26th day of October, 2018.

**STRINDBERG & SCHOLNICK LLC**

/s/     Erik Strindberg
Erik Strindberg
*Attorneys for Plaintiff*